The People, on the relation of Wesley H. Manier, Plaintiffs in Error, *v.* Milgar Couchman et al., Defendants in Error.

#### ERROR TO HANCOCK.

If the law providing for township organization should be repealed, it must be done by pursuing the same course and adopting the same guarantees to protect the rights of all, which were required to be observed in the adoption of the system.

This proceeding was heard before O. C. Skinner, Judge, at October term, 1853, of the Hancock Circuit Court. ·

This was a proceeding by *quo warranto* against the defendants, as county judge and associate justice of Hancock county.

Hancock adopted township organization under the law of 1849, by a vote which is admitted in the record to have been legal. Under the new township organization law of 1851 a new vote was taken.

In 1853 a special law was passed, authorizing Hancock county to take another vote as to the adoption of township organization. This vote was taken, and resulted in a majority for its adoption.

The defendants herein have disregarded this vote, and are acting as county judge and associate justice, performing the duties of supervisors in relation to county business.

These facts appear by the pleadings upon a demurrer, to which the case comes to this court.

The question for decision is, whether the county has adopted township organization or not.

Williams & Lawrence, and Blackwell and Beckwith, for the relator.

The People, *ex rel.* Manier *v.* Couchman.

WHEAT & GROVER, and WARREN & EDMUNDS, for respondents.

CATON, J.   The sixth section of the seventh article of the constitution provides, that " The general assembly shall provide by a general law for a township organization, under which any county may organize whenever a majority of the voters of such county, at any general election, shall so determine." At the first session of the legislature, after the adoption of the constitution, in obedience to this provision, a general law was passed providing for township organization, to be voted upon in the several counties, at the ensuing general election.   At that election, the county of Hancock adopted the law by the requisite and constitutional vote, and organized accordingly.   At the next session of the legislature this law was amended, or rather a substitute for it was adopted, by the fourth and fifth sections of the twenty-fifth article of which it was provided, that upon the petition of fifty legal voters of any county which had adopted township organization, an election should be held at the next annual town meeting, for or against township organization ; and if it should appear that a majority of all the voters voting at such election voted against such township organization, then the county so voting should cease to act under such organization.   Under this law an election was held in Hancock county, at which election, we shall assume, a majority of the voters voted against township organization, although to arrive at this conclusion, it would become necessary to sustain the objections to the returns of two towns in the county, by which their votes were excluded in the canvass.   With the view we take of this case, that becomes immaterial.   We do not think the legislature had the power to allow a county to abolish township organization, where it had been adopted in the constitutional mode, in a way less solemn, or with different formalities or safeguards to secure the most deliberate action of the people, than the constitution required should be observed in its adoption.   This, we are aware, is a grave question, and it is certainly a new one, so far as our observation has extended, and it never could arise except under a constitution like ours, which requires a vote of the people to give the law vitality in the particular county.   Such constitutional provisions are of modern invention, still it is the duty of the courts to see that the rights to the people intended to be secured by them, shall not be frittered away.   The question is not here presented, whether the legislature had a right to change the details of the law, as experience might suggest or demonstrate to be necessary, but it

is whether the legislature had a right to abrogate the system altogether, after it had been adopted by the constitutional vote. The former they may have the right to do, for that seems to be contemplated by the language of the constitution; for it provides, that after a county has voted for township organization, " the affairs of said county may be transacted in such manner as the general assembly may provide." It is manifest that this provision, to be made for the transaction of county affairs, shall be under the township system, for the provision has express reference to that system, which was by the constitution secured to those counties, a majority of whose voters should adopt it. It would be trifling with the constitution to say, that while it commanded the legislature to provide a system of township government, and secured the right to the people to adopt it by their vote, it was at the same time left to the legislature to nullify and abrogate the whole, and thus at their mere pleasure take away those rights which the constitution had guaranteed to the counties, and for the enjoyment of which they were commanded to provide. Can it be said that they were commanded to obey the law and do the act, and then were permitted to turn round and destroy it? Such would not be a sensible or a reasonable construction of the constitution. If rights are secured by the constitution, they cannot be destroyed by the legislature, although they may have authority to regulate them, or prescribe the mode of their exercise. This, to my mind, is exceedingly clear. If the legislature cannot take away this right of township organization or township government themselves, by a direct act, they cannot authorize others to take it from them. By allowing the right to be taken away by a different and less guarded vote than that by which it was adopted, is in effect allowing others to take it from them. The constitution provides that township organization may be adopted by a majority of the voters of a county at a general election, but at none other. There was an object in requiring this vote to be taken at a general election, and that object undoubtedly was, to obtain the fullest and fairest expression possible of all the voters of the county. While it might be reasonably supposed that all the voters would attend a general election, when the officers of the State and federal government are to be elected, no such general attendance may be expected at a special election, where the interests at stake are generally less momentous; and hence, if the subject were allowed to be acted upon at a special election, the system might be adopted by less than a majority of all the voters of the county. If it was deemed necessary to protect the interests and wishes of the majority in

the township system, that it should be voted upon at a general election, it is equally important and essential to the rights of the majority that when they have thus adopted the system, it shall not be taken from them except by a vote at a general election, when all may be presumed to attend. Although the constitution makes no express provision for the abandonment of the system, when once adopted according to its provisions, we are not prepared to say that it may not reasonably be construed to allow the legislature to provide for its abrogation; but if they do so, it must be done by pursuing the same course, and adopting the same guarantees, to protect the rights of all, which the constitution requires to be observed in the adoption of the system, that is to say, it must be done at a general election, and by a majority of the voters. Such was not the case here. The system was abrogated in Hancock county, not at any general election, but only at their town meetings, when there was not even a county officer to be elected; and when even the law provided no judge or clerks to hold the election and make the proper returns. This is a fatal objection to the whole proceeding, and to that portion of the law under which it was had. This conclusion supersedes the necessity of inquiring into the regularity of the returns which were made, or into the legality or the results of the election, which was held under the special law of 1843. We are of opinion that the township system never was legally abrogated in Hancock county, after its first adoption under the law of 1849, and that the people were entitled to judgment.

The judgment of the circuit court must be reversed, and the cause remanded.

*Judgment reversed.*